**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

DARREN R. JONES,

        Plaintiff,

        v.

JOHN BOYLE, WILLIAM RUETE, and ROBERT GASPAROVIC,

        Defendants.

Civil Action No. 08-3062 (KSH)

**OPINION**

**Katharine S. Hayden, U.S.D.J.**

    This matter comes before the Court on motions for summary filed by plaintiff Darren Jones and defendants John Boyle, William Ruete, Robert Gasparovic, Englewood Tire Distributors, Inc. and Englewood Tire Wholesale, Inc. (collectively "defendants"). Jones alleges that defendants violated Title VII of the Civil Rights Act of 1964 by paying him less than his co-workers because he is black. Defendants concede that Jones was paid less than two of his co-workers for several years, but attribute the wage difference to Jones's poor work performance and argue that Jones has failed to produce any evidence of discriminatory intent.

    For the reasons stated below, Jones's motion for summary judgment (D.E. 65) is denied, and defendants' motion for summary judgment (D.E. 61) is granted.

**Background:**[1]

Jones worked as a driver and warehouse employee for Englewood Tire Distributors ("ETD"), a wholesaler of trucks and tires, from July 1997 to July 2007, when he voluntarily resigned.[2] Defendant Boyle is EDT's owner, while defendants Gasparovic and Ruete were Jones's supervisors. Jones was an at-will employee at EDT, which had no union and which retained Jones despite downsizing its workforce several times during his employment. (Def's Statement of Uncontested Material Facts in Supp. of Def's Mot. for Summ. J ("Def's Statement"), D.E. 61–6 ¶¶ 18–20; Def's Mov. Br., D.E. 61 at 3.)

After obtaining a "right to sue" letter from the Equal Employment Opportunity Commission, Jones brought this complaint in June 2008, alleging "underpayment of wages/salary based solely on race and not performance." (*See* D.E. 1–3.) The Court has jurisdiction because Jones's claim is made pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e to 2000e(16).

Jones's complaint centers on the fact that he was paid less than two-workers, one Hispanic and the other Portuguese. When he was hired in 1997, Jones's salary was eight dollars per hour, and he received annual raises of fifty-cents per hour. (Def's Statement ¶¶ 39–45.)

---

[1] Defendants provided a statement of uncontested material facts in support of their motion pursuant to Local Civil Rule 56.1. (D.E. 61–6 ¶¶ 1–85). Plaintiff submitted an "Opposition of Defendants' Uncontested Material Facts" (D.E. 67) that provides a partial response to 19 of defendants' 85 material facts and no response to the remainder. Mindful that plaintiff is a pro se litigant, the Court will identify the relevant facts from plaintiffs' various submissions and his deposition testimony, as well as from defendants' statement of undisputed material facts. *See Strobert v. Ocean County Jail*, No. 07-CV-3172, 2011 WL 63601 at *1 (D.N.J. Jan. 7, 2011)(citing *Athill v. Speziale*, 2009 WL 1874194 at *2 (D.N.J. June 30, 2009)).

[2] Midway through Jones's employment, EDT was restructured and Jones became an employee of Englewood Tire Wholesale ("ETW"). (Def's Br. in Supp. of Summ. J. ("Def's Mov. Br.") at 3). For ease of reference, the Court refers to ETD and ETW collectively as "ETD." Although EDT and ETW originally were not named in this action, the Court granted Jones's request to amend the complaint to add them as defendants. (D.E. 51.)

When he resigned in July 2007, Jones was making $13.50 per hour. (Id.) The parties agree that for a certain period Jones was paid less than his two co-workers—Jones claims the difference at one point reached as high as $2.50. (Pt's "Preliminary Statement," D.E. 72 at 3.) However, defendants note that during the first five years of his employment, Jones was paid the same as the two co-workers in question, and only after the sixth year did his salary begin diverging from those of the other two. (Def's Statement ¶ 45.)

Defendants contend that Jones's job performance "was consistently sub-par, and his personnel file reflects very poorly on him" (Def's Mov. Br. at 1), and they cite a long history of Jones's work-related problems, including multiple warnings for misconduct and mistakes, accidents with his delivery truck, and a "pattern of insubordination, hostility to co-workers and other belligerent conduct." (Id. at 3.) Jones's opposition fails to dispute or even discuss many of defendants' material facts, including that Jones's supervisors "verbally reprimanded or warned him about his delivery completion time . . . as well as his conduct and demeanor with them," and that "[o]n at least one occasion, plaintiff asked a [co-worker] to 'slow down' on the completion of delivery routes because plaintiff thought the disparity reflected badly on him." The core of defendants' evidence of Jones's poor job performance is a list of 28 "warnings, incidents/accidents, and other occurrences." (Def's Statement ¶ 32.) Jones raises various challenges to this list, including that no written or verbal warnings were ever issued to him, that the warnings do not "meet [defendants'] own self-imposed standards for authentication" and that defendants could have fired him based on the cited failings but did not. (Pt's Opp'n to Def's Uncontested Material Facts ("Pt's Opp'n Statement"), D.E. 67 ¶ 3; Pt's "Preliminary Statement" at 3.)

3

However, the Court, having reviewed Jones's testimony regarding each of these incidents at his deposition, when he was subject to close questioning by counsel, finds that of the 28 incidents, Jones fully denied only four (including a complaint that he took too long to complete his delivery routes). (Tr. of Dep. of Darren Jones, Nov. 3, 2009 ("Tr."), D.E. 61, ex.d at 55:11–19, 57:1–59:16.)  In at least 21 instances, though he frequently stated that he did not know the exact date of occurrence , Jones admitted the substance of the alleged incident,.

In response to one charge that he punched a co-worker, Jones insisted instead that he shoved the co-worker.  (Tr. 65:4–68:10.)  The other 20 incidents that he admits include: taking an unauthorized break (Tr. 42:8–43:16); not calling the warehouse upon reaching the end of his route (Tr. 43:17–26); driving with a cargo door askew and losing merchandise along his route (Tr. 47:22–48:15); damaging his work vehicle (Tr. 50:13–51:2); damaging customer's property with his work vehicle on at least two occasions (Tr. 51:17–51:25 and 91:22–92:20); delivering the wrong tires to customers on multiple occasions or else not delivering enough tires (Tr. 52:18–53:6; 48:16–49:1; 52:1–17; and 52:18–55:10); turning in invoices that lacked customers' signatures (Tr. 51:3–16); having a 37-minute cell phone conversation with a fellow worker on a company phone (Tr. 55:20–56:25); getting his work vehicle stuck in the mud during a delivery (Tr. 59:17–60:6); leaving his delivery truck to get a drink and returning to find a smashed mirror (63:6–15); not picking up a check from a dealer (Tr. 63:16–64:6); not taking his work cell phone with him (Tr. 64:7–17); leaving documents with a dealer (Tr. 64:18–65:3); and failing to take a call from the office and being rude to a manager when questioned about the incident (Tr. 74:18–75:17).

In August 2006, Jones told Boyle that he had discovered a pay difference between himself and two co-workers, but he did not complain that he believed he was being paid less because of his race. (Def's Statement ¶¶ 52–59.)  Jones testified that never heard an EDT manager, including Boyle, "make any disparaging remarks about him or to him," and he never heard an EDT employee or supervisor "make any offensive remark" about his race color.  (Id. ¶ 27.)  Nor does Jones dispute that EDT promoted a black co-worker to the position of assistant manager after three years on the job   (Def's Statement ¶ 49; Pt's Opp'n Statement ¶ 5), though he does complain that the worker's promotion "denied that opportunity to others whose employment pre-dates his."  (Pt's Preliminary Statement at 7.)  In his deposition, Jones describes how he concluded that he was being paid less because of his race "by process of elimination." (Tr. 123:21–129:18.)  His resignation letter of July 13, 2007, however, makes no mention of race, but simply states, "Til we meet again." (Def's Decl. of Counsel in Supp. of Mot. for Summ. J., D.E. 61, ex.g.)

**Standard of Review:**

A motion for summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  When a party asserts that a fact is genuinely disputed, the party must support that assertion by citing to materials in the record, including depositions, documents affidavits or other materials.  Fed. R. Civ. P. 56(c)(1)(a).  If a party "fails to properly support an assertion of fact or fails to properly address another party's assertion of fact," the

court may "grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it." F. R. Civ. P. 56(e)(3).

When a court analyzes a motion for summary judgment, the "inferences to be drawn from the underlying facts. . . must be viewed in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (*quoting United States v. Diebold, Inc.,* 369 U.S. 654, 655 (1962)).

**Discussion:**

Title VII makes it illegal for an employer to "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1). The Third Circuit has held that individual employees cannot be held liable under Title VII, *Emerson v. Thiel College*, 296 F.3d 184, 190 (3d Cir. 2002)(citing *Sheridan v. E.I. DuPont de Nemours and Co.*, 100 F.3d 1061, 1077–78 (3d Cir. 1996)), and that liability under Title VII may not be imposed "on employers even if they are the sole owners of the business." *Manns v. Leather Shop Inc.*, 960 F. Supp. 925, 928 (D.V.I. 1997)(citing *Humphreys v. Medical Towers, Ltd.*, 893 F. Supp. 672 (S.D.Tex. 1995)). Therefore, in addition to the reasons given below, Jones cannot maintain his action against Boyle, Ruete and Gasparovic.

A Title VII discrimination claim is analyzed under the familiar burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, which requires that Jones carry "the initial burden under the statute of establishing a prima facie case of racial discrimination." 411 U.S. 792, 802–803 (1973). Such a showing gives rise to an inference of discrimination, shifting the

burden of production to defendants to articulate a nondiscriminatory reason for the unfavorable employment action.  *Fuentes v. Perskie*, 32 F.3d 759, 763 (3d Cir. 1994)(quoting *McDonnell Douglas*, 411 U.S. at 802).  At this stage, defendants "need not prove that the tendered reason actually motivated [their] behavior, as throughout this burden-shifting paradigm the ultimate burden of proving intentional discrimination always rests with the plaintiff." *Id*. (internal citation omitted).  If defendants satisfy their "relatively light burden by articulating a legitimate reason" for their action, then the "burden of production rebounds to the plaintiff, who must now show by a preponderance of the evidence that the employer's explanation is pretextual."  *Id*.

To survive summary judgment, Jones must submit evidence casting sufficient doubt on the legitimate reasons offered by defendant so that a factfinder either "could reasonably conclude that each reason was a fabrication" or "infer that discrimination was more likely than not a motivating or determinative cause of the adverse employment action."  *Wishkin v. Potter*, 476 F.3d 180, 185 (3d Cir. 2007)(internal citation omitted).  Jones "cannot simply show that the employer's decision was wrong or mistaken, since the factual dispute at issue is whether discriminatory animus motivated the employer, not whether the employer is wise, shrewd, prudent, or competent."  32 F.3d at 765.  Rather, Jones must show "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions" in defendants' proffered reasons such that "a reasonable factfinder *could* rationally find them 'unworthy of credence'. . . and hence infer that the employer did not act for [the asserted] non-discriminatory reasons." *Id*. (emphasis in the original) (internal citations omitted).  In the context of a discrimination claim, "conclusory allegations of discrimination, in the absence of particulars, are insufficient to

7

defeat summary judgment." *Taylor v. Cherry Hill Bd. of Education*, 85 Fed. Appx. 836, 839 (3d Cir. 2004)(citing *Jalil v. Avdel Corp.*, 873 F.2d 701, 707 (3d Cir. 1989)).

For the purposes of this discussion, the Court will assume that Jones has made a prima facie case under Title VII. However, after carefully examining the record, the Court is convinced that, as defendants argue, "Jones cannot rebut defendants' legitimate, non-discriminatory reasons for the [disparity] in his compensation" (Def's Mov. Br. at 1). Here, Jones has failed completely to adduce evidence showing "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions" in defendants' explanation that he was paid less because of his job performance. In particular, Jones cannot explain away his own testimony acknowledging more than 20 different incidents—including numerous delivery mistakes, merchandise loss, property damage and even shoving a co-worker—that support defendants' position that his job performance was lacking. The bonuses, raises and the 30 personal loans totaling $10,000 extended to Jones—despite his documented work failings—argue against any discriminatory animus on defendants' behalf and, indeed, suggest that EDT treated Jones generously under the circumstances. (Def's Statement ¶¶ 29–31; Pt's Opp'n Statement ¶¶ 2–4.) Jones cannot point to a single negative comment in the record that defendants made about his race, and he has conceded that it was only the "process of elimination" that led him to discover that he was the victim of discrimination.

Jones erroneously denies that he must show discriminatory intent on behalf of the defendants at all (*See* Pt's Opp'n Statement at 4–5*;* Pt's Preliminary Statement at 19) in order to survive summary judgment. As evidence of defendants' discriminatory animus, he points only to an alleged EDT policy forbidding "the discussion of salary among co-workers under penalty of

termination" and to the fact that Gasparovic allegedly stopped giving warehouse workers annual performance reviews after becoming manager in 1999 (two years after Jones began working at EDT). (Pt's Opp'n Statement at 5.) Neither of these arguments is persuasive. Even if defendants did not provide employee annual reviews—and Jones points to no legal authority saying defendants' were required to do so—the record is replete with evidence suggesting that Jones knew exactly where he stood at EDT. Furthermore, Jones fails to acknowledge that, for at least five years of his employment, he earned as much—and at times more—than the two co-workers with whom he compares his wages. Jones also fails to account for the fact that, beyond his personal bonuses and raises, ETD promoted a black co-worker to assistant manager.

The Court is satisfied that Jones has not produced sufficient evidence to raise a genuine issue of fact as to whether defendants' "proffered reasons were not its true reasons for the challenged employment action." *Sheridan*, 100 F.3d at 1067. On the contrary, the record is full of uncontroverted evidence that EDT based salary decisions for Jones on his work performance, and not the color of his skin.

For these reasons, Jones's motion for summary (D.E. 65) is denied, and defendants' motion for summary judgment (D.E. 61) is granted. An appropriate order will be entered.

/s/ Katharine S. Hayden
June 30, 2011                                      Katharine S. Hayden, U.S.D.J.